IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ANDREW OBRIECHT, individually and
on behalf of those similarly situated,

OPINION and ORDER

Plaintiff,

18-cv-877-slc

v.

CHRISTOPHER SPLINTER, *et al*.,

Defendants.

Plaintiff Andrew Obriecht filed this civil action on behalf of himself and other similarly-situated individuals under 42 U.S.C. § 1983, challenging the constitutionality of Wisconsin State Patrol's alleged policy and practice of having officers stop and cite drivers who flash their headlights to warn oncoming drivers of a speed trap ahead. Obriecht, who was stopped and cited for flashing his headlights, claims that his act was expressive conduct protected under the First Amendment, and alleges that his stop, detention, and subsequent citation constitute retaliation under the First Amendment, an unreasonable seizure under the Fourth Amendment, and an unconstitutional deprivation of his liberty under the due process clause. Obriecht is suing defendants Christopher Splinter, J.D. Lind, Charles Teasdale, Jason Zeeh, and Craig Larson in their individual capacities and defendant Dave Ross in both his individual and official capacities.

Defendants have moved to dismiss Obriecht's claims on the following grounds: (1) Obriecht cannot state an independent due process claim challenging the lawfulness of the arrest, which arises under the Fourth Amendment; (2) Obriecht cannot show that his stop, detention, and citation amounted to retaliation under the First Amendment or an unreasonable seizure under the Fourth Amendment because the trooper who stopped Obriecht had probable cause

to believe that Obriecht was violating the law; (3) even if Obriecht's conduct is expressive, it is not protected speech under the First Amendment because it facilitates speeding by other drivers; (4) § 1983 and the Eleventh Amendment preclude Obriecht from seeking damages against Ross in his official capacity; and (5) defendants are all entitled to qualified immunity with respect to the individual capacity claims against them. Dkt. 11.

For the reasons stated below, I am granting the motion to dismiss with respect to Obriecht's due process, Fourth Amendment, and First Amendment retaliation claims. I am denying the motion with respect to Obriecht's claim for declaratory and injunctive relief that the alleged policy and practice of stopping, detaining, and citing drivers who flash their headlights to warn oncoming drivers of a speed trap violates his right to free speech under the First Amendment.

Obriecht alleges the following facts in his complaint (dkt. 1):

## ALLEGED FACTS

On October 16, 2018 at about 1:57 p.m., plaintiff Andrew Obriecht was driving on Highway 33 in the Town of Caledonia, in Columbia County, Wisconsin when he saw a speed trap.[1] After passing the speed trap, he flashed his headlights to warn oncoming traffic to slow down and proceed with caution. According to Obriecht, he did not suspect other drivers of violating any law and that flashing of headlights is commonly understood as conveying the message to slow down and proceed with caution.

---

[1] "A stretch of road watched by concealed officers or devices (as radar) to catch motorists who exceed a speed limit." *Webster's Third New International Dictionary* (unabridged, 1971) at 2190.

At some point after Obriecht flashed his headlights, defendant Christopher Splinter, a trooper with the Wisconsin State Patrol, activated flashing lights and siren on his marked squad to signal to Obriecht that he must pull over to the side of the road. Obriecht complied. Trooper Splinter issued Obriecht Wisconsin Uniform Citation number BC256111-2 for violating Wis. Stat. § 347.07(2)(c), which states in relevant part that "no person shall operate any vehicle or equipment on a highway which has displayed thereon . . . [a]ny flashing light." The citation stated that Obriecht will be assessed three points against his license and that he must appear in court to dispute the citation. Obriecht was not free to leave the stop until after he received the citation.

At around 9:43 a.m. on October 17, 2018, Obriecht spoke by telephone with State Patrol Sergeant Gary Helgerson (not a defendant), who told Obriecht that it was the policy and practice of the State Patrol to stop, detain, cite, and prosecute individuals for warning of a speed trap by flashing their headlights on and off. At about 2:15 p.m. on the same day, Obriecht spoke with defendant Lieutenant Craig Larson—an executive State Patrol officer with policymaking authority for the counties of Columbia, Dane, Dodge, Green, Iowa, Lafayette, Rock, and Sauk—who confirmed the policy and practice described by Sgt. Helgerson.

The remaining defendants created or ratified the policy and practice of stopping, detaining, citing, and prosecuting individuals for violating Wis. Stat. § 347.07(2)(c). Defendant Dave Ross is the Secretary and chief policymaker for the Wisconsin Department of Transportation, which oversees the State Patrol. Defendant Superintendent J.D. Lind is the chief policymaker for the State Patrol. Defendant Colonel Charles Teasdale has policymaking authority for the State Patrol. Defendant Captain Jason Zeeh is the Commander of the State

3

Patrol for the counties of Columbia, Crawford, Dane, Dodge, Grant, Green, Iowa, Juneau, La Crosse, Lafayette, Monroe, Richland, Rock, Sauk, and Vernon.

After Obriecht filed suit in this court on July 8, 2018, the Columbia County Circuit Court dismissed his citation in *State v. Obriecht, Columbia County*, Case No. 2018TR5645 (docket available online at https://wcca.wicourts.gov).[2]

## ANALYSIS

### I. Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the complaint's legal sufficiency. A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Bell *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### II. Due Process Claims

Obriecht alleges in his complaint that he was deprived of "his liberty" under the Fifth Amendment during the traffic stop and detention and by having to defend the citation. Dkt.

---

[2] This court may take judicial notice of undisputed matters of public record, such as a state court docket entry, without converting motion to dismiss to motion for summary judgment. *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 591 (7th Cir. 2008) ("[A] court is of course entitled to take judicial notice of judicial proceedings.").

4

1 at ¶¶ 34(c-e). As defendants point out, because defendants are state employees, Obriecht's due process claims arise under the Fourteenth Amendment rather than the Fifth Amendment, which applies only to federal officials. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"). Defendants also are correct that "[t]he Fourth Amendment, not the due process clause, is the proper basis for challenging the lawfulness of an arrest." *Alexander v. McKinney*, 692 F.3d 553, 558 (7th Cir. 2012) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) and *Albright v. Oliver*, 510 U.S. 266, 275 (1994) and explaining that there is no substantive due process claim where another specific constitutional provision protects right at issue). In addition, the burden of appearing in court or otherwise defending against prosecution, in and of itself, does not implicate a liberty interest. *Id.* at 557 n.2.

Obriecht has not responded to defendants' arguments or even attempted to make a case that he has a cognizable due process claim in this case. Accordingly, I will consider Obriecht's arguments on this issue to be waived and presume that he has abandoned his due process claims. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 n.1 (7th Cir. 2011) (discussing plaintiff's failure to respond to arguments supporting motion to dismiss and stating that "[c]onsistent with our precedent, we use the word waive, although forfeit is perhaps the more accurate term").

### III. Fourth Amendment Claim

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The United States Supreme Court has held that "[t]emporary detention of individuals during the stop of an

5

automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons'" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. The Court of Appeals for the Seventh Circuit has explained that "[p]robable cause is an absolute defense to claims of wrongful or false arrest under the Fourth Amendment," and it is "gauged from the vantage point of a reasonable officer facing the same situation." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017).

Obriecht generally alleges in his complaint that the State Patrol's policy and practice of stopping, detaining, and prosecuting drivers who flash their headlights "without warrant, reasonable suspicion, or probable cause to believe that such activity violates any law" violates the Fourth Amendment. Dkt. 1 at ¶¶ 33-34, 38. He also alleges that Trooper Splinter did not have probable cause to stop, detain, or issue him a citation on October 16, 2018. According to Obriecht's complaint, neither Trooper Splinter nor any other "reasonable officer" would believe that these drivers were violating Wis. Stat. § 347.07(2)(c), which provides:

> (2) Except as provided in sub. (3), or as otherwise expressly authorized or required by this chapter, no person shall operate any vehicle or equipment on a highway which has displayed thereon:
>
> (a) Any color of light other than white or amber visible from directly in front; or
>
> (b) Any color of light other than red on the rear; or
>
> (c) Any flashing light.

Defendants argue that Obriecht, by alleging that he operated his vehicle with flashing lights, has set forth facts establishing that probable cause existed for Trooper Splinter to stop and

6

cite him under Wis. Stat. § 347.07(2)(c). Defendants reason that an officer viewing Obriecht's conduct would reasonably conclude that Obriecht had committed or was committing the offense of operating a vehicle that displayed a flashing light. They further argue that even if Trooper Splinter was incorrect, his mistaken belief that flashing headlights fell within the prohibition set forth in the statute was reasonable.

As he did with his due process claim, Obriecht has failed to discuss the Fourth Amendment or any of defendants' arguments in his response brief. Therefore, he has waived his argument on this issue and abandoned his Fourth Amendment claims.

For completeness sake, I note that in an introduction to his argument concerning his First Amendment retaliation claim, Obriecht generally contends that flashing one's headlamp on-and-off is not a "flashing light" under Wis. Stat. § 347.02(2)(c). In support of this contention, he cites *Waukesha County v. Meinhardt*, 2001 WI App 146 at ¶¶ 9-13, 246 Wis. 2d 672, 630 N.W.2d 277 (WI App 2001) (unpublished), in which the state court of appeals interpreted the plain language of a *different* statute, Wis. Stat. § 347.12(1), related to the dimming of multiple-beam headlamps for oncoming vehicles. However, *Meinhardt* is not relevant or instructive on the issue of probable cause because it interprets a different statute than the one Obriecht was accused of violating.[3]

---

[3] The version of the statute at issue in *Meinhardt*, Wis. Stat. § 347.12(1) (1997-98), required motor vehicles to use sufficient light to reveal a person or vehicle at a safe distance, except that the operator must dim, depress, or tilt the vehicle's headlights within 500 feet of an oncoming vehicle or approaching a vehicle. Meinhardt was stopped by a sheriff's deputy for quickly flashing his high-beam headlights to alert the sheriff's approaching squad to dim its own headlights. Although the deputy testified that he believed the flashing of high-beam headlights constituted a violation of § 347.12(1)(a), the state court of appeals found that the plain language of the statute did not prohibit this activity and that the deputy did not have a proper legal basis to justify the traffic stop.

7

Accordingly, defendants' motion to dismiss Obriecht's Fourth Amendment claims will be granted.

IV. **First Amendment Claims**

    A. **Legal Standards**

Obriecht raises two different First Amendment claims: (1) the State Patrol's alleged policy and practice of stopping, detaining, citing, and prosecuting individuals for warning other drivers of an upcoming speed trap by flashing their headlights on and off impermissibly burdens a driver's First Amendment right to engage in expressive activity and constitutes retaliation for the expression of that First Amendment right; and (2) Trooper Splinter stopped, detained, and issued Obriecht a citation in retaliation for his exercise of his First Amendment right.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." It protects conduct, symbols, and non-verbal communication that express or convey a particularized message reasonably understood by viewers. *Texas v. Johnson*, 491 U.S. 397, 404-06 (1989); *Spence v. State of Washington*, 418 U.S. 405, 409-11 (1974) (per curiam). Defendants seem to concede that flashing one's headlights to communicate with other drivers is expressive conduct, so I will assume the same. However, even if Obriecht's conduct was an expressive activity, the protections afforded by the First Amendment are not absolute, and the government may regulate or restrict certain categories of expression consistent with the Constitution. *Virginia v. Black*, 538 U.S. 343, 358 (2003). For example, speech that incites or produces "imminent lawless action," *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), or is

8

integral to criminal conduct, such as fighting words, threats, and solicitations, *United States v. White*, 610 F.3d 956, 960 (7th Cir. 2010), is not protected by the First Amendment.

In addition, the First Amendment also prohibits government actors from retaliating against individuals for exercising their right to free speech. To make out a prima facie case for First Amendment retaliation, Obriecht must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered an adverse action that would likely deter free speech; and (3) the First Amendment activity was a motivating factor in the decision to take adverse action. *Greene v. Doruff*, 660 F.3d 975, 977-78 (7th Cir. 2011). If Obriecht satisfies all three elements, then the burden shifts to defendants to show that the retaliatory motive was not a "but for" cause, or a "necessary condition of the harm—the harm would have occurred anyway." *Id.* at 980. If retaliation is not the "but for" cause of the adverse action, then "the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012) (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)).

### B. Summary of Defendants' Challenges

Defendants argue that Obriecht's allegations are insufficient to state either a First Amendment free expression or retaliation claim because Obriecht's conduct was unprotected speech intended to facilitate the criminal activity of speeding. Defendants further argue that Obriecht's retaliation claim fails on the ground that Trooper Splinter had probable cause to stop and detain Obriecht for operating a vehicle with a flashing light, meaning that Obriecht would

9

have been issued a citation regardless of any retaliatory motive on Splinter's part.[4] Finally, defendants argue that none of them can be held liable in their individual capacities because they are protected by the doctrine of qualified immunity and that any attempt by Obriecht to seek damages against Ross in his official capacity is barred by Eleventh Amendment sovereign immunity.

I will first address whether Obriecht's expressive conduct is protected by the First Amendment and then discuss defendants' immunity defenses. Because I find that Trooper Splinter is entitled to qualified immunity on Obriecht's retaliation claim, it is unnecessary to address defendants' argument regarding probable cause.


C. Protected Speech

In a brief argument, defendants contend that because Obriecht's conduct was intended to warn oncoming drivers of a covert law enforcement operation and facilitated the crime of speeding, it does not fall within the protection of the First Amendment. Although defendants cite some cases involving speech that urges or advocates the commission of a crime or instructs others how to commit a crime, they rely on only two cases in making their crime-facilitation argument: (1) *Haig v. Agee*, 453 U.S. 280, 308-90 (1981), in which the Supreme Court held that an ex-CIA agent's repeated disclosures of intelligence operations and the names of intelligence personnel were not protected speech under First Amendment because of the "substantial

---

[4] Although defendants raise probable cause as a defense to Obriecht's First Amendment retaliation claim against Trooper Splinter, they do not make clear whether they also are raising probable cause as a defense to Obriecht's First Amendment challenges to the State Patrol policy and practice. In any event, the United States Supreme Court foreclosed such an argument in *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1955 (2018), in which it held that the plaintiff "need not prove the absence of probable cause to maintain a claim of retaliatory arrest against the city."

likelihood of 'serious damage' to national security or foreign policy"; and (2) *U.S. v. Lane*, 514 F.2d 22, 26-27 (9th Cir. 1975), in which the Ninth Circuit concluded that a criminal defendant who warned a drug ring of an impending police raid was guilty of aiding and abetting a conspiracy to sell drugs. Although *Haig* involved a First Amendment challenge, there was no First Amendment claim in *Lane*, and the court of appeals in that case did not analyze whether the defendant's conduct could be considered protected speech.

The crux of defendants' argument is that much like warning others about intelligence operations or an impending police raid, the message that Obriecht conveyed helped others commit an illegal act without getting caught. However, at most, Obriecht's actions may have prevented the State Patrol from apprehending a few would-be speeders. Obriecht's warning did not present the same national security concerns at issue in *Haig* or form an integral part of the crime as in *Lane*. *Compare United States v. Twinn*, 369 F. Supp. 2d 721, 724-25 (E.D. Va. 2005) (citing *Haig* in support of finding that defendant's identification of undercover police officer not protected by First Amendment because defendant intended to interfere with known investigation of illegal sexual solicitation). As the Supreme Court has made clear, "the prospect of crime . . . by itself does not justify laws suppressing protected speech." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002) (citing *Kingsley Int'l Pictures Corp. v. Regents of Univ. of N.Y.*, 360 U.S. 684, 689 (1959) ("Among free men, the deterrents ordinarily to be applied to prevent crime are education and punishment for violations of the law, not abridgment of the rights of free speech" (internal quotation marks and citation omitted)). *See also NAACP v. Claiborne Hardware*, 458 U.S. 886, 909-10 (1982) (knowingly publishing names of people who were not

complying with boycott was constitutionally protected, even though some non-participants had been violently attacked and publication clearly could facilitate such attacks).

"No Supreme Court case squarely deals with crime-facilitating speech." Eugene Volokh, *Crime-Facilitating Speech*, 57 Stan. L. Rev. 1095, 1128 (2005) (reviewing cases and citing *Stewart v. McCoy*, 537 U.S. 993, 995 (2002) (Stevens, J., respecting the denial of certiorari) ("Our cases have not yet considered whether, and if so to what extent, the First Amendment protects such instructional speech.")). However, as Obriecht points out, one federal district court has addressed conduct similar to that in this case and found that it is entitled to protection under the First Amendment. *Elli v. City of Ellisville, Mo.*, 997 F. Supp. 2d 980, 984 (E.D. Mo. 2014) ("Even assuming, *arguendo*, that Plaintiff or another driver is communicating a message that one should slow down because a speed trap is ahead and discovery or apprehension is impending, that conduct is not illegal."). In addition, at least two state circuit courts also have found that drivers have a constitutional right to flash their headlights. *See State of Oregon v. Hill*, Citation No. 034117 (Jackson Cty. (Ore.) Justice Ct. Apr. 9, 2014) (flashing vehicle headlights to warn others about presence of law enforcement is protected free speech under state constitution); *State v. Walker*, No. I-9507-03625 (Williamson Cty. (Tenn.) Cir. Ct. Nov. 13, 2003) (accepting First Amendment defense to charge of knowingly interfering with officer where defendant flashed headlights to warn oncoming motorists about speed trap).

In sum, although the law is far from clear on this issue, defendants have failed to meet their burden of showing that Obriecht has no plausible claim for relief under the First Amendment.

**D. Qualified Immunity**

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "In other words, qualified immunity 'shields from liability police officers 'who act in ways they reasonably believe to be lawful.'" *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (quoting *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008)). *See also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("[E]xisting precedent must have placed the statutory or constitutional question beyond debate."). Qualified immunity is an affirmative defense, but the plaintiff carries the burden of defeating it once it is raised. *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013).

The doctrine of qualified immunity does not apply to Obriecht's official capacity claim against Ross for declaratory or injunctive relief. *See Volkman v. Ryker*, 736 F.3d 1084, 1091 (7th Cir. 2013) (qualified immunity does not apply to claims for equitable relief); *Akins v. Board of Governors of State Colleges and Univs.*, 840 F.2d 1371 (7th Cir.1988) (injunctive relief may only be obtained against public officials acting in their official capacity).

As with many of defendants' other arguments, Obriecht does not directly address defendants' assertion of qualified immunity or identify any existing precedent that places the protected speech question "beyond debate." *Ashcroft*, 563 U.S. at 741. As discussed at length

13

above, the law is far from settled about whether drivers have a First Amendment right to flash their headlights to convey a warning to oncoming vehicles. Neither the Supreme Court nor any federal court of appeals has addressed the issue. Accordingly, defendant Splinter is entitled to qualified immunity with respect to Obriecht's First Amendment retaliation claim against him and defendants Lind, Teasdale, Zeeh, Larson, and Ross are entitled to qualified immunity with respect to Obriecht's individual capacity claims that they created or approved the policy and practice of stopping and citing drivers the on-and-off flashing of headlights violates his right to free speech under the First Amendment. With no individual capacity claim left in this case, Obriecht's only recourse is equitable relief against Ross in his official capacity.

### E. Eleventh Amendment Sovereign Immunity

Obriecht has not refuted defendants' contention that a state official acting in his official capacity is the state, which may not be sued for damages under § 1983 pursuant to the Eleventh Amendment. *Will v. Michigan Department of State Police*, 491 U.S. 58, 66 (1989); *Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018). Defendants are correct. Obriecht may not seek monetary damages from Ross in his official capacity.

## V. Conclusion

Obriecht's sole remaining claim is his official capacity claim against Ross for declaratory and injunctive relief for the alleged violation of his right to free speech under the First Amendment. Although defendants have failed to meet their burden at this early stage with respect to whether Obriecht may state a claim for relief, this does not mean that all of their

defenses are foreclosed or that defendants cannot challenge Obriecht's speech as unprotected at a later stage in this litigation, after the relevant facts and legal issues are further developed.

Some important questions will need to be answered as this case progresses. Let's start with standing: may Obriecht bring a claim for injunctive relief on behalf of himself and other similarly-situated individuals based solely on a previous prosecution? As a general rule, the fact that a person was previously prosecuted for violating a law is insufficient by itself to establish the person's standing to request injunctive relief. *Schirmer v. Nagode*, 621 F.3d 581, 585-86 (7th Cir. 2010) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108 (1998) (standing to request injunctive relief is lacking when only past harm is alleged); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" and injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical"); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.")).

In addition, Obriecht will have to prove the existence of a regularly-applied policy and practice and establish whether it is a content-based government restriction subject to a strict scrutiny analysis or a content-neutral restriction subject to a less demanding standard.

15

## ORDER

IT IS ORDERED that defendants' motion to dismiss, dkt. 11, is GRANTED in part and DENIED in part:

(1) Defendants' motion is DENIED only with respect to plaintiff Andrew Obriecht's claim against Dave Ross in his official capacity for declaratory and injunctive relief that the alleged Wisconsin State Patrol policy and practice of stopping, detaining, and citing drivers who flash their headlights to warn oncoming drivers of a speed trap violates his right to free speech under the First Amendment.

(2) Defendants' motion is GRANTED in all other respects.

(3) Plaintiff's due process, Fourth Amendment, and First Amendment retaliation claims are DISMISSED.

(4) Plaintiff's First Amendment free expression claims against defendants Ross, J.D. Lind, Charles Teasdale, Jason Zeeh, and Craig Larson are DISMISSED.

(5) Christopher Splinter, Lind, Teasdale, Zeeh, and Larson are DISMISSED as defendants in this case.

Entered this 23rd day of April, 2019.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge